No. 23-1068

---

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

ASSOCIATION FOR EDUCATION FAIRNESS,

Plaintiff – Appellant,

v.

MONTGOMERY COUNTY BOARD OF EDUCATION;
DR. MONIFA B. MCKNIGHT,

Defendants – Appellees.

---

On Appeal from the United States District Court
for the District of Maryland
Honorable Paula Xinis, District Judge

---

**MOTION TO HOLD CASE IN ABEYANCE
PENDING FINAL RESOLUTION OF
*COALITION FOR TJ v. FAIRFAX COUNTY SCHOOL BOARD***

---

JOSHUA P. THOMPSON
CHRISTOPHER M. KIESER
ERIN E. WILCOX
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
JThompson@pacificlegal.org
CKieser@pacificlegal.org
EWilcox@pacificlegal.org

GLENN E. ROPER
Pacific Legal Foundation
1745 Shea Center Drive,
  Suite 400
Highlands Ranch, CO 80129
Telephone: (916) 503-9045
GERoper@pacificlegal.org

*Attorneys for Plaintiff – Appellant*

Appellant Association for Education Fairness (AFEF) moves to hold this case in abeyance pending the final disposition in this Court and in the Supreme Court of the United States of *Coalition for TJ v. Fairfax County School Board* (No. 22-1280), currently pending in this Court. Appellees—Montgomery County Board of Education and Superintendent Monifa B. McKnight in her official capacity (collectively MCPS)—agree that the case should be held in abeyance pending this Court's decision in *Coalition for TJ*, but disagree that it should be held pending final Supreme Court disposition of that case. MCPS accordingly plans to oppose this motion.

**FACTUAL BACKGROUND**

This is an equal protection challenge to the criteria for admission to MCPS' four magnet middle school programs. AFEF is an association made up mainly of Montgomery County parents, most of whom are Asian American and many of whom have children who want to participate in the magnet programs in the coming years. ECF No. 51 in Case No. 8:20-cv-02540-PX, ¶¶ 9–10 (hereinafter Amended Complaint). It sued MCPS in September 2020, alleging that new criteria MCPS added to the admissions process were designed to limit the enrollment of Asian-

1

American students in the magnet programs. *See generally* ECF No. 1 in Case No. 8:20-cv-02540-PX. The new criteria included "local norming" of students' percentile scores on the Cognitive Abilities Test (CogAT) such that an individual student's scores were only compared to others who attended an elementary school in the same socioeconomic "band" as the student. Amended Complaint ¶ 67. Upon a motion to dismiss, the district court found it plausible that these criteria, "while facially race neutral, was implemented to adjust or balance the racial groups within the middle school magnet programs." *Ass'n for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*, 560 F. Supp. 3d 929, 956 (D. Md. 2021). That was enough to require application of strict scrutiny and ultimately to deny MCPS' motion. *See id.*

The case was headed to discovery when it hit a snag. At least in part in response to the COVID-19 pandemic, MCPS announced changes to the admissions criteria in December 2020. *See id.* at 943. The district would no longer administer the CogAT and would instead conduct admissions based on a lottery among those scoring in the top 15 percent on the Measure of Academic Progress reading and math assessments. Amended Complaint ¶¶ 86–87. Once again, this measure was locally

normed so that a student only had to be in the top 15% among students in his or her socioeconomic band to qualify for the lottery. *Id*. When MCPS indicated that the lottery would be the permanent process going forward, AFEF amended its complaint to allege that the lottery, too—and particularly the use of local norming to determine the students eligible for the lottery—was chosen with the intent to limit the enrollment of Asian-American students in the magnet programs. *See id*. ¶ 102. The district court, however, thought the lottery was sufficiently removed from the process that led to the implementation of the original overhaul. *Ass'n for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*, __ F. Supp. 3d __, 2022 WL 3019762, at *10 (D. Md. July 29, 2022). It granted MCPS' second motion to dismiss and later denied AFEF's Rule 60(b) motion for relief from the judgment. This appeal followed.

Meanwhile, a similar case has been ongoing in Fairfax County, Virginia. There, a group of parents known as the Coalition for TJ challenged the Fairfax County School Board's overhaul of the admissions criteria for the Thomas Jefferson High School for Science and

Technology, considered one of the best public high schools in the nation.[1] Like AFEF, the Coalition for TJ is represented by attorneys from the Pacific Legal Foundation. The Coalition filed its complaint in March 2021, making similar allegations that the Board's overhaul was designed to harm Asian-American students. After discovery, the district court granted the Coalition's motion for summary judgment and enjoined the Board from implementing the new criteria. *See Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, No. 1:21cv296, 2022 WL 579809, at *10–11 (E.D. Va. Feb. 25, 2022). The district court in *Coalition for TJ* cited the initial district court decision in this case for the proposition that criteria designed to *increase* enrollment of certain groups are by necessity designed to *decrease* enrollment of the disfavored groups. *See id.* at *10 (citing *Ass'n for Educ. Fairness*, 560 F. Supp. 3d at 953).

While the second motion to dismiss was still pending in this case, the Fairfax County School Board moved for a stay pending appeal in *Coalition for TJ*. This Court granted the stay on March 31, 2022, over

---

[1] TJ is currently ranked #1 in the U.S. News and World Report ranking of public high schools. The school's U.S. News profile page is available here: https://www.usnews.com/education/best-high-schools/virginia/districts/fairfax-county-public-schools/thomas-jefferson-high-school-for-science-and-technology-20461 (last visited Feb. 7, 2023).

Judge Rushing's dissent. *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, No. 22-1280, 2022 WL 986994 (4th Cir. Mar. 31, 2022). The Coalition then asked the Supreme Court to vacate this Court's stay and reinstate the district court's injunction. The Supreme Court denied the application on April 25, 2022, over the dissenting votes of Justices Thomas, Alito, and Gorsuch. 142 S. Ct. 2672 (mem.). The case proceeded on the expedited argument calendar in this Court—it was argued on September 16, 2022, and remains pending in this Court.

## REASONS FOR HOLDING THE CASE IN ABEYANCE

Fourth Circuit Rule 12(d) permits this Court, "[i]n the interest of docket control" to "place a case in abeyance pending disposition of matters before this Court or other courts which may affect the ultimate resolution of an appeal." Here, the parties agree that the pending *Coalition for TJ* appeal involves overlapping issues. Like this case, *Coalition for TJ* is an equal protection challenge to competitive K-12 admissions criteria. Both cases involve the application of *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), and *Personnel Administrator v. Feeney*, 442 U.S. 256 (1979), to the novel question whether the use of criteria designed to further racial

5

balancing of admitted students amounts to intent to discriminate against the disfavored group (in both cases, Asian-American students). The parties also agree that this case should be held in abeyance and disagree only on the length of the abeyance period.

In AFEF's view, this case should be held in abeyance not only pending this Court's decision in *Coalition for TJ*, but also pending any further proceedings at the Supreme Court in *Coalition for TJ*. A shorter period—like MCPS' proposed stay pending only this Court's *Coalition for TJ* decision—would not fully advance judicial economy. While a grant of Supreme Court review is a remote possibility in many cases, that is not the case for *Coalition for TJ*. When three justices voted to grant the Coalition's application to vacate this Court's stay, they necessarily concluded that the Supreme Court "could and very likely would" ultimately grant certiorari to review this Court's decision. *See Coleman v. Paccar, Inc.*, 424 U.S. 1301, 1304 (1976) (Rehnquist, J., in chambers). The remaining six justices could have voted to deny the application for any number of reasons, including the emergency procedural posture in which it was presented to the Supreme Court. If just one of them ultimately votes to hear the *Coalition for TJ* case after this Court's

decision on the merits, certiorari will likely be granted. It makes little sense for this Court—or the parties—to brief and consider this appeal when a Supreme Court decision in *Coalition for TJ* could require reconsideration of this case with the Supreme Court's guidance. Extending the abeyance period to include the Supreme Court disposition (or the expiration of the period for seeking Supreme Court review, if no review is sought) would therefore avoid substantial expenditure of resources for both the parties and the Court.

This conservation of judicial economy does not come at any appreciable cost. A longer abeyance period would not prejudice MCPS, as it was the prevailing party below and may continue to use the challenged criteria while the case is held in abeyance. The additional period would also be relatively short—just a few months if the parties choose not to seek certiorari in *Coalition for TJ* or if the Supreme Court ultimately decides not to grant it. Though the delay would be longer if the Court grants certiorari, it would make little sense to move forward on briefing and argument in this case while the Supreme Court has such a similar case on its merits docket. The difference between the shorter and longer abeyance periods favored by each party thus likely comes down to

7

between four and six months that will elapse while a petition for certiorari in *Coalition for TJ* is prepared and then is considered by the Supreme Court. Because the longer period conserves judicial economy and causes no prejudice, the Court should adopt it.

## CONCLUSION

For the reasons stated herein, AFEF respectfully asks this Court to hold this appeal in abeyance pending the final disposition of *Coalition for TJ v. Fairfax County School Board* in the Supreme Court of the United States or the expiration of the period for seeking Supreme Court review.

DATED: February 7, 2023.

Respectfully submitted,

JOSHUA P. THOMSON
CHRISTOPHER M. KIESER
ERIN E. WILCOX
GLENN E. ROPER

By: /s/ Christopher M. Kieser
    CHRISTOPHER M. KIESER
*Attorneys for Plaintiff – Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 23-1068    Caption: Ass'n for Ed. Fairness v. Montgomery Cnty. Bd. of Ed.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains __1,539__ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word [*identify word processing program*] in 14 point, Century Schoolbook [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) Christopher M. Kieser

Party Name Association for Education Fairness

Dated: February 7, 2023

**Certificate of Service**

I hereby certify that on February 7, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Christopher M. Kieser
CHRISTOPHER M. KIESER
