No. 23-1068

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

ASSOCIATION FOR EDUCATION FAIRNESS,

Plaintiff – Appellant,

v.

MONTGOMERY COUNTY BOARD OF EDUCATION;
DR. MONIFA B. MCKNIGHT,

Defendants – Appellees,

and

ASIAN AMERICAN YOUTH LEADERSHIP EMPOWERMENT AND DEVELOPMENT; CASA, INC.; IDENTITY, INC.; MONTGOMERY COUNTY BRANCH OF THE NAACP; MONTGOMERY COUNTY PROGRESSIVE ASIAN AMERICAN NETWORK,

Proposed Intervenors.

On Appeal from the United States District Court
for the District of Maryland
Honorable Paula Xinis, District Judge

**APPELLANT'S SUPPLEMENTAL MEMORANDUM BRIEF**

| | |
|---|---|
| JOSHUA P. THOMPSON<br>CHRISTOPHER M. KIESER<br>ERIN E. WILCOX<br>Pacific Legal Foundation<br>555 Capitol Mall, Suite 1290<br>Sacramento, CA 95814<br>Telephone: (916) 419-7111<br>JThompson@pacificlegal.org<br>CKieser@pacificlegal.org<br>EWilcox@pacificlegal.org | GLENN E. ROPER<br>Pacific Legal Foundation<br>1745 Shea Center Drive,<br>  Suite 400<br>Highlands Ranch, CO 80129<br>Telephone: (916) 503-9045<br>GERoper@pacificlegal.org |

*Attorneys for Plaintiff – Appellant*

# Table of Contents

                                            **Page**

Table of Authorities ................................................................................ ii

Question 1:  If a district court decision rests on multiple grounds and the appellee declines to defend one of those grounds, what impact (if any) does that have on the appellate court's ability or obligation to consider the undefended ground in resolving the appeal? ................1

Question 2:  If Federal Rule of Civil Procedure 24 does not control, *see Cameron v. EMW Women's Surgical Center, P.S.C.*, 142 S. Ct. 1002, 1010 (2022), what is the proper standard for evaluating a motion to intervene on appeal? ...................................4

Question 3:  To what extent does *Berger v. N.C. State Conference of the NAACP*, 142 S. Ct. 2191 (2022), apply to intervention on appeal? ......9

Question 4:  To the extent it is applicable here, what portion of *Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013), survives *Berger*? ................................10

Certificate of Compliance ..................................................................................15

Certificate of Service ...........................................................................................16

## Table of Authorities

### Cases

*Alvarez v. Lynch*,
   828 F.3d 288 (4th Cir. 2016) ............................................................................2–3

*Amalgamated Transit Union Int'l, AFL-CIO v. Donovan*,
   771 F.2d 1551 (D.C. Cir. 1985) .........................................................................4–5

*Automobile Workers v. Scofield*,
   382 U.S. 205 (1965) .............................................................................................4

*Beazer East, Inc. v. Mead Corp.*,
   412 F.3d 429 (3d Cir. 2005) ................................................................................2

*Berger v. N.C. State Conference of the NAACP*,
   142 S. Ct. 2191 (2022) ............................................................................9, 11–12

*Bridges v. Dep't of Md. State Police*,
   441 F.3d 197 (4th Cir. 2006) ..............................................................................7

*Cameron v. EMW Women's Surgical Center, P.S.C.*,
   142 S. Ct. 1002 (2022) .............................................................................4, 6, 9

*Cawthorn v. Amalfi*,
   35 F.4th 245 (4th Cir. 2022) ...............................................................................7

*Cincinnati Insurance Co. v. Eastern Atlantic Insurance Co.*,
   260 F.3d 742 (7th Cir. 2001) ............................................................................1–2

*Hardy v. City Optical Inc.*,
   39 F.3d 765 (7th Cir. 1994) ................................................................................2

*Hutchinson v. Pfeil*,
   211 F.3d 515 (10th Cir. 2000) ............................................................................7

*In re Grand Jury Investigation*,
   587 F.2d 598 (3d Cir. 1978) ................................................................................5

*Leary v. Daeschner*,
   228 F.3d 729 (6th Cir. 2005) ...............................................................................2

*N.C. Green Party v. N.C. State Bd. of Elections*,
   619 F. Supp. 3d 547 (E.D.N.C. 2022) ................................................................12

*N.C. State Conf. of NAACP v. Berger*,
 999 F.3d 915 (4th Cir. 2021) ...................................................................9, 11, 13

*Perry v. Prop. 8 Official Proponents*,
 587 F.3d 947 (9th Cir. 2009) ...................................................................................11

*Richardson v. Flores*,
 979 F.3d 1102 (5th Cir. 2020) ..............................................................................5, 7

*Sharp Farms v. Speaks*,
 917 F.3d 276 (4th Cir. 2019) ....................................................................................7

*Spring Constr. Co. v. Harris*,
 614 F.2d 374 (4th Cir. 1980) ....................................................................................5

*Stuart v. Huff*,
 706 F.3d 345 (4th Cir. 2013) ..............................................................................10–11

*United States v. New-Indy Catawba, LLC*,
 No. 21-cv-02053, 2022 WL 18357257 (D.S.C. Sept. 15, 2022) ........................12

*United States v. Prince-Oyibo*,
 320 F.3d 494 (4th Cir. 2003) ..................................................................................12

*W. Va. Coal Workers' Pneumoconiosis Fund v. Bell*,
 781 F. App'x 214 (4th Cir. 2019) ...............................................................1, 3–4

**Other Authorities**

Fourth Circuit L.R. 12(e) ................................................................................5, 8

Order (ECF No. 43), *North Carolina State Conference of NAACP v. Raymond*, No. 20-1092 (4th Cir. Mar. 27, 2020) ............................................6–7

iii

**1. If a district court decision rests on multiple grounds and the appellee declines to defend one of those grounds, what impact (if any) does that have on the appellate court's ability or obligation to consider the undefended ground in resolving the appeal?**

In this case, the district court adopted the position of the proposed intervenors (who were then amici curiae) regarding how to measure disparate impact in the context of a claim of intentional discrimination. Proposed intervenors now seek to intervene on appeal in part to advance that argument in case Appellees—the Montgomery County Board of Education and its superintendent—decline to assert it on appeal. Does the Board waive or forfeit the district court's disparate impact holding by failing to defend it in this Court in the face of Appellant Association for Education Fairness' contrary arguments?

This Court has never directly addressed this question, although it has come close. In a recent unpublished opinion, Judge Richardson described the varying approaches of sister circuits answering the question "whether an appellee can be charged with forfeiture when he fails to respond to the appellant's arguments." *W. Va. Coal Workers' Pneumoconiosis Fund v. Bell*, 781 F. App'x 214, 226 (4th Cir. 2019) (Richardson, J., announcing the judgment) (footnote omitted).[1] He noted that the Seventh Circuit applies a strict forfeiture rule—and in *Cincinnati Insurance Co.*

---

[1] Despite being an unpublished opinion, all three judges on the panel wrote separate opinions in *Bell*. Appellant does not assert that Judge Richardson's opinion is binding on this Court. It is cited to show the differing opinions on the question presented—and otherwise as persuasive authority.

1

*v. Eastern Atlantic Insurance Co.*, 260 F.3d 742, 747–48 (7th Cir. 2001), that court reversed a judgment on the sole ground that the appellee failed to respond to the appellant's non-frivolous, dispositive argument. Meanwhile, the Third Circuit held that while "an appellee does not concede that a judgment should be reversed by failing to respond to an appellant's argument in favor of reversal," the appellee "waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the [appellant]." *Beazer East, Inc. v. Mead Corp.*, 412 F.3d 429, 437 n.11 (3d Cir. 2005) (quoting *Hardy v. City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994)). On the other hand, the Sixth Circuit rejected any rule that would require reversal of a judgment based "merely [on] the cross-appellees' failure to respond to the cross-appellant's arguments," *Leary v. Daeschner*, 228 F.3d 729, 741 n.7 (6th Cir. 2005), but the panel did not say that the same rule would apply if the appellee defended the judgment on other grounds.

As Judge Richardson noted, this Court has not decided the issue. The most relevant decision is *Alvarez v. Lynch*, 828 F.3d 288 (4th Cir. 2016). That was an immigration case where the petitioner sought cancellation of removal, but the Board of Immigration Appeals found him ineligible due to his conviction for forgery in Virginia. *Id.* at 291. In his petition for review, the petitioner argued that his conviction did not qualify as an "aggravated felony" sufficient to make him ineligible for relief, but the government ignored that argument in its response brief,

2

arguing instead that the case should be remanded to the BIA based on a then-recent Supreme Court decision. *See id.* at 295. Although this Court noted that the government's "outright failure to join in the adversarial process would ordinarily result in waiver," it nevertheless thought itself "constrained" to answer the question petitioner posed because the case "ultimately turn[ed] on a question of statutory interpretation." *Id.*[2] While *Alvarez* is not a conclusive holding, it does suggest that this Court rejects the position that an appellee always forfeits an issue decided below by failing to defend it in the face of the appellant's arguments. However, *Alvarez* also indicates that forfeiture or waiver is appropriate in some circumstances.

    Whether appellees have forfeited the defense of a portion of the judgment below ultimately comes down to competing policies. As Judge Richardson has explained, forfeiture exists to "instill respect for the adversarial process." *Bell*, 781 F. App'x at 226. If this Court "always undertook a complete review of the appellant's argument when the appellee had declined to respond, [it] would dull appellees' incentives to participate in the process" and leave the Court worse off, having to decide potentially important issues "without the benefit of argument from both sides." *Id.* at 226–27. And there is always the possibility that "an appellee's failure to address an issue conspicuously presented in the appellant's brief might well reflect

---

[2] The government also eventually "got around to addressing" the issue in a Rule 28(j) letter. *See* 828 F.3d at 295.

3

a conscious choice," which would caution the Court perhaps to tread lightly in addressing "issues a party has voluntarily chosen to concede." *Id.* at 227. On the other hand, there are situations when the Court's "interest in doing substantive justice weighs against accepting a meritless argument simply because the other side has failed to respond." *Id.* And "respect for the district courts" counsels that this Court might sometimes consider "arguments for affirmance in the form of a reasoned opinion by the lower tribunal, no matter what the appellee says (and fails to say) in its brief." *Id.*

This is all to say that Appellees' potential failure to defend the district court's disparate impact conclusion *could* be treated as forfeiture of that argument, after evaluating the factors discussed above. But, depending on the circumstances, this Court may excuse that forfeiture and reach the merits of the question.

**2. If Federal Rule of Civil Procedure 24 does not control, *see Cameron v. EMW Women's Surgical Center, P.S.C.*, 142 S. Ct. 1002, 1010 (2022), what is the proper standard for evaluating a motion to intervene on appeal?**

The Supreme Court has noted that "[n]o statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed." *Cameron*, 142 S. Ct. at 1010. In place of such a standard, the Court has "considered the 'policies underlying intervention' in the district courts." *Id.* (quoting *Automobile Workers v. Scofield*, 382 U.S. 205, 217 n.10 (1965)). Without any guidance from the Federal Rules of Appellate Procedure, "courts of appeals have developed their own

4

standards of intervention in order to take account of the unique problems caused by intervention at the appellate stage." *Amalgamated Transit Union Int'l, AFL-CIO v. Donovan*, 771 F.2d 1551, 1553 n.3 (D.C. Cir. 1985). But even to this day, the lack of a rule specifically authorizing intervention on appeal has made case law "scarce." *Richardson v. Flores*, 979 F.3d 1102, 1104 (5th Cir. 2020). Indeed, it is so scarce that this Court does not appear to have set out a test, except to say that "intervention on appeal will be granted only under exceptional circumstances." *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 n.1 (4th Cir. 1980).[3] Sister circuits, however, have gone somewhat further in restricting it. *See Richardson*, 979 F.3d at 1105 ("[T]o prevent litigants from using procedural gamesmanship to skirt unfavorable standards of review, there must be a steep threshold for allowing intervention on appeal."); *In re Grand Jury Investigation*, 587 F.2d 598, 601 (3d Cir. 1978) ("Those courts which have considered the question have recognized that while a court of appeals has power to permit intervention that power should be exercised only in exceptional circumstances for imperative reasons."). The upshot is that while the Rule 24 factors may be relevant, courts of appeals—including this one—have also required a showing beyond what would entitle a litigant to intervention in the district court.

---

[3] This Court's local rules do authorize motions for intervention on appeal. L.R. 12(e). But the rules provide no hint of the proper standard to assess such motions.

5

With case law hard to come by, there are not many examples of successful applications for appellate intervention. *Cameron* itself perhaps exemplifies the type of exceptional circumstances that might justify appellate intervention. There, plaintiffs challenging a Kentucky abortion regulation initially named the Kentucky Attorney General as a defendant alongside the State's Secretary for Health and Family Services. 142 S. Ct. at 1007. But the attorney general was dismissed before the case proceeded to a final judgment against the Secretary, enjoining the challenged law. *Id.* at 1007–08. The Secretary—represented by the Attorney General—appealed, and the Sixth Circuit affirmed. *See id.* But the Secretary (now appointed by a governor who opposed the abortion law) declined to pursue en banc review, so the Attorney General moved to withdraw as counsel for the Secretary and intervene on behalf of the State to file a petition for rehearing. *Id.* Considering this highly unusual procedural posture, the Supreme Court held that the Attorney General could intervene to protect Kentucky's interest in defending its own law in federal court. *See id.* at 1010–11.

Absent a state's sovereign interest in defending its own law, it is not clear what sort of exceptional circumstances might warrant intervention on appeal.[4] What

---

[4] One of the reasons case law is sparse is because not all orders on motions to intervene on appeal come with an accompanying opinion. For example, in *North Carolina State Conference of NAACP v. Raymond*, No. 20-1092, a panel of this Court allowed the leaders of the North Carolina General Assembly to intervene on appeal in the State defendants' appeal of the district court's grant of a preliminary

is clear, however, is that litigants may not use appellate intervention to circumvent typical procedural requirements or standards of review. For example, "[t]he district court's denial of a motion to intervene is 'treated as a final judgment that is appealable.'" *Sharp Farms v. Speaks*, 917 F.3d 276, 289 (4th Cir. 2019) (quoting *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 207 (4th Cir. 2006)). That means a would-be intervenor must appeal that denial within 30 days of the order denying intervention. And on appeal, the denial is subject to deferential abuse of discretion review. *See Cawthorn v. Amalfi*, 35 F.4th 245, 253 (4th Cir. 2022). Other circuits have noted that permitting appellate intervention to replace an appeal of the denial of a motion to intervene would not only permit litigants to "escape the consequences of noncompliance with traditional rules of appellate jurisdiction and procedure," *Hutchinson v. Pfeil*, 211 F.3d 515, 519 (10th Cir. 2000), but also avoid the deferential standard of review, *see Richardson*, 979 F.3d at 1105 ("If [appellate courts] analyzed motions to intervene on appeal using the same framework district courts use to address motions to intervene there, litigants would effectively have *de novo* review of their intervention motion."). These cases suggest a categorical

---

injunction against North Carolina's voter ID law—the same law at issue in *Berger*, discussed below. ECF No. 43. The order notes only that Judges Richardson and Quattlebaum voted to grant the motion while Judge Harris voted to deny it. None of the judges wrote to explain their vote.

7

prohibition on appellate intervention for litigants who moved unsuccessfully to intervene in the district court.

Besides the requirement to show exceptional circumstances, this Court's rules suggest a limited role for intervenors. Local Rule 12(e) allows litigants to seek intervention on appeal, but "[i]ntervenors are required to join in the brief for the side which they support unless leave to file a separate brief is granted by the Court." Under this rule, a party filing an amicus brief would have more editorial control over its arguments than one who intervened on appeal—purportedly on the side of a party it believed did not represent its interests. Surely, it would take a strange case like *Cameron* for intervention on appeal to make sense if the intervening party would not have the ability to file its own brief. It follows that without these sort of circumstances, appellate intervention should be disfavored.

There is admittedly not much law on the propriety of appellate intervention, but what little that does exist counsels that (1) it is allowed under certain circumstances; but (2) those circumstances must be different from the typical case where a party might seek intervention in the district court; and (3) a party may not use intervention on appeal to escape the usual rules governing appeals of intervention motions from the district court. Fortunately, this Court need not devise a test to cover intervention on appeal in this case because these principles are enough to deny the pending motion. The proposed intervenors here chose not to appeal the

8

district court's order denying their motion to intervene. And even aside from that, there are no exceptional circumstances in this case that warrant appellate intervention—certainly nothing that rises to the level of Kentucky's sovereign interest in *Cameron*. This is instead a run of the mill intervention case that should have been resolved in a normal procedural posture.

### 3. To what extent does *Berger v. N.C. State Conference of the NAACP*, 142 S. Ct. 2191 (2022), apply to intervention on appeal?

As discussed above, the paucity of case law on appellate intervention suggests that: (1) it is allowed in some exceptional circumstances; and (2) whether to allow it in a particular exceptional case depends, at least in part, on the "policies underlying" Rule 24, *see Cameron*, 142 S. Ct. at 1010. *Berger* was an exceptional case in many regards—including that the legislative leaders who sought to intervene did so twice in the district court. *See N.C. State Conf. of NAACP v. Berger*, 999 F.3d 915, 924 (4th Cir. 2021) (en banc). Yet by the time it reached the Supreme Court, the posture was the same: a typical case reviewing the denial of a motion to intervene under Rule 24. *Berger*, 142 S. Ct. at 2198–2200. As discussed more fully below, *Berger* simply held that the presumption of adequacy of representation typically applicable when a proposed intervenor seeks to join a case alongside a government defendant does not apply when the proposed intervenors are agents of the state authorized to defend state law. *Id.* at 2204.

9

Because *Berger* dealt with a motion to intervene in the district court, its interpretation of Rule 24 is relevant only to the extent Rule 24 standards apply to appellate intervention—that is, a showing of entitlement under Rule 24 is necessary but not sufficient to warrant appellate intervention. But regardless, a would-be intervenor on appeal should not be able to escape the requirement to show that its interests are not adequately represented by existing parties—the very basis for allowing additional parties into a lawsuit. *Berger*'s holding on adequacy of representation should be applied to intervention on appeal in the same way Rule 24's other requirements apply.

**4. To the extent it is applicable here, what portion of *Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013), survives *Berger*?**

Much like this case, *Stuart* saw private parties seek to intervene on the side of the government to defend the government's enactment. There, the proposed intervenors were a group of pro-life doctors and others who sought to defend a state law requiring those performing abortions to provide a real-time ultrasound before the procedure. 706 F.3d at 348. This Court held that a strong presumption of adequacy of representation exists when a private party seeks to intervene alongside a government defendant so long as the private party and the government "share the same ultimate objective." *Id.* at 352. *Stuart* defined "ultimate objective" broadly, in terms of the overall result of the litigation. *Id.* ("Both the government agency and the would-be intervenors want the statute to be constitutionally sustained."). Where

10

the government defendants and the proposed intervenor seek the same outcome, the proposed intervenor "must mount a strong showing of inadequacy" through a showing of adversity of interest, nonfeasance, or collusion. *Id.* This presumption is difficult to overcome, since mere "disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy." *Id.* at 353 (citing *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 954 (9th Cir. 2009)).

In *Berger*, this Court sitting en banc held that the *Stuart* presumption applied even where the proposed intervenors were the leaders of the North Carolina General Assembly empowered by state statute to intervene and represent the State in a constitutional challenge to state law. *Berger*, 999 F.3d at 932–34. Yet as even the preceding sentence suggests, *Berger*—much like *Cameron*—was an exceptional case. Not only did it involve a challenge to the State's voter ID law, but the defendants—the Governor and his appointed members of the State Board of Election—had a public record of opposing voter ID laws. *Berger*, 142 S. Ct. at 2198. In these circumstances, the Supreme Court held that a presumption of adequacy was inappropriate. As the Court put it, "[t]he people of North Carolina have authorized the leaders of their legislature to defend duly enacted state statutes against constitutional challenge[;] . . . a federal court must respect that kind of sovereign choice, not assemble presumptions against it." *Id.* at 2206.

11

*Berger* did not purport to abrogate *Stuart*—nor any other case that has endorsed the heightened presumption. Instead, it expressly did "*not decide* whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance." *Id.* at 2204 (emphasis added). *Berger* held merely that a heightened presumption "is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Id.* After *Berger*, district courts have continued to apply *Stuart*'s heightened presumption in cases where a private party seeks to intervene alongside a government defendant. *See United States v. New-Indy Catawba, LLC*, No. 21-cv-02053, 2022 WL 18357257, at *11–12 (D.S.C. Sept. 15, 2022); *N.C. Green Party v. N.C. State Bd. of Elections*, 619 F. Supp. 3d 547, 561–62 & n.8 (E.D.N.C. 2022) (specifically referencing *Berger* in a footnote to say that it had not decided whether a presumption might apply to private parties). That is for good reason—neither a district court nor a circuit panel may depart from circuit precedent "[a]bsent an en banc overruling or a superseding contrary decision of the Supreme Court." *United States v. Prince-Oyibo*, 320 F.3d 494, 498 (4th Cir. 2003). Simply put, *Berger* is not contrary to *Stuart*.

12

The en banc decision in *Berger* helps to amplify this point. Responding to the General Assembly leaders' argument that *Stuart* was inapplicable because the proposed intervenors were "another governmental entity, equally well-suited to speak in defense of a state statute"—the argument the Supreme Court ultimately accepted—the en banc majority noted that *Stuart* did "not by its terms control this case." *Berger*, 999 F.3d at 932. Instead, the majority thought the question presented was "whether *Stuart*'s heightened presumption of adequacy *should* be afforded to government defendants even when other governmental entities, like the Leaders here, seek to intervene on their side." *Id.* This Court said yes, even while admitting that "some of *Stuart*'s reasoning does not translate to this context." *Id.* The Supreme Court disagreed on whether to impose the presumption, but it agreed that *Stuart*'s reasoning was not directly applicable—that is how it avoided passing on this Court's heightened presumption in other contexts. In short, the answer here need not—and does not—affect the vitality of *Stuart*'s separate holding that private putative intervenors must mount a strong showing of inadequacy to overcome a heightened presumption of adequacy of representation.

Put simply, to the extent the Rule 24 factors are relevant here, *Stuart*'s heightened presumption is applicable to this case. *Berger*'s holding that the

13

presumption does not apply to government defendants intervening as authorized by state law to defend a state statute does not affect *Stuart*'s application in this case.

DATED: June 9, 2023.

Respectfully submitted,

JOSHUA P. THOMSON
CHRISTOPHER M. KIESER
ERIN E. WILCOX
GLENN E. ROPER

By: /s/ Christopher M. Kieser
    CHRISTOPHER M. KIESER

*Attorneys for Plaintiff – Appellant*

14

## Certificate of Compliance

I certify:

This supplemental memorandum brief complies with the page limit set pursuant to this Court's Amended Order (Doc. 26) filed April 11, 2023, and does not exceed 15 pages.

This supplemental memorandum brief complies with the typeface and type style requirements pursuant to Fed. R. App. P. 32(a)(5)(A) and 32(a)(6), as it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Times New Roman.

Dated: June 9, 2023.

/s/ Christopher M. Kieser
CHRISTOPHER M. KIESER
*Attorney for Plaintiff – Appellant*

**Certificate of Service**

I hereby certify that on June 9, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Christopher M. Kieser
CHRISTOPHER M. KIESER